Thank you. My apologies for being delayed and coming on the bench with Judge Raji here and by Zoom or some other instrument we have Judge Carney with us as well. And we have two cases for argument. The first two cases on the calendar are on submission. We'll hear counsel in Gray Cables Corporation etc. v. William Arthur. Go ahead, Mr. Weintraub. May it please the Court. Thank you, Your Honor. My name is Alan Weintraub. I practice law in Champlain, New York, a small town on the Canadian border in Clinton County, which is adjacent to Shazy, New York, which is one of the defendants in this lawsuit. To point out to the Court that Mr. Tetreault was the code enforcement officer of Shazy and also Champlain. They share a code enforcement officer. And since his retirement, his replacement is also the code enforcement officer in Champlain as well as Shazy. Our argument basically is that my client was denied his rights to due process. There was no hearing. There was no notice. The defense's argument is only technical. There's no justice in it. There's no equity in it. There was an order of the town council which caused the condemnation of my client's buildings, one of which no one was living in, the other of which four people were living in. There were four apartments, which were occupied by families, and they were forced to move out because of this order by the town council. If you look at the order, it's on page 839 of the joint appendix. It was resolved in line 7. Bear with me, Mr. Weintraub. Yes, sir. 39. All right. Walk us through this, Dr. Weintraub. Yes, sir. It's the offending order which took my client's property away from him. They evicted all the people that were living there, and they forbid my client from using the buildings for any purpose whatsoever. Not only the building that people were living in, but people that were not living in. But for some reason, they made up some emergency facts, which didn't exist. As a matter, we submitted a professional engineer's affidavit, Mr. Hamlin, which said that there's no danger. There's no danger to anybody. And Judge Sanis, she had a similar case in Rouse's Point, which is a village inside the town of Champlain. And the same code enforcement officer, Michael Tetreault, he was found to be not guilty of a civil rights violation because there was an emergency, and the property of the complainant was blocking traffic. There were fire trucks. The building was on fire. That was an emergency. May I ask you, I understand that this is what you're asserting you could all demonstrate, but looking at the pleadings, which you were allowed to amend several times, the pleading with respect to emergency says that you were eventually told what the violations were, and, quote, few, if any, close quote, presented life-threatening harm. That's not the same as none presented life-threatening harm. That pleading admits the possibility of some being life-threatening. Then the pleadings also indicate that you had no opportunity to be heard before the vote, but at the meeting, the minutes indicate that your attorney asked to be heard after the vote, which might be construed as a waiver of an opportunity to be heard before the vote. So help me out on those two pleadings perhaps supporting the district court's conclusion that this allegation, this due process allegation, was insufficient. Yes, ma'am. I heard from my client that they were going to have a board meeting where they were going to vote on the condemnation of this building. That's the first I heard of it was at that meeting. At that meeting, Mr. Arthur, who I know very well, I went up to Mr. I'm not asking you for your explanation. I'm asking why the pleadings are not insufficient. Well, I believe there was an affidavit that was submitted in a motion to amend the pleading, which included my affidavit. That's not the pleading. I mean, you were given many opportunities to amend, and what the district court was ultimately left with was what I just quoted to you, unless I've overlooked something in the pleadings. Yes, ma'am. I have problems with documents being properly submitted to the court under the ECF system. For example, the affidavit of Mr. Hamlin was not considered by Judge Sanis in her latest decision, where she dismissed this matter with prejudice. But why should it have been? Why aren't the pleadings all the district court would properly look at? Because it was a motion under Section 15, and it was right there. And if this was summary judgment, which the effect of her ruling with prejudice was the same effect as summary judgment, we would have been allowed to submit any evidence which would have evidenced an issue of law or fact. And we submitted that with the Rule 15 motion. Mr. Weingarten, you weren't on summary judgment. You were asking the court to treat, as I understand it, the affidavit as either a written instrument or something integral to the complaint, or you're saying that the court should have taken judicial notice of it. But on an affidavit, you can't do that with an affidavit. These are potentially contested facts. And so if you look just at the pleading that was submitted, I, like Judge Bragi, don't see a basis for the district court to have found a basis for a due process violation, because I take it you do acknowledge that in a proper emergency, the town would have authority to close a property or condemn a property. Absolutely, Your Honor. So your contention is that there wasn't such an emergency, and your post-declaration proceeding wasn't enough. Is that right? That's what the judge said, but I don't believe that's the case. I think it was enough that it was attached to an article, excuse me, a Rule 15 motion, and it was submitted with the request to allow amendment. The first amendment was to make it a corporate only, as opposed to an individual who owned it in a corporation. The second was to show there was no emergency, as the judge had asked for. And the third was because she said it was futile. And this is not futile, Your Honor. Was the affidavit mentioned in the complaint? The complaint is not just a short statement. The complaint is a rather full statement. It's on A7, and that was the first one. Yes, sir. The affidavit you're referring to is the one by Richard Hamlin on page 219? That's the only one I know that's involved in this case, so probably. Yes, sir. So that's the affidavit you're relying on. Yes, sir. And was this submitted along with or attached to or annexed to the complaint? It was submitted with the complaint in the same submission, ECF, with a motion to allow amendment, because this is the third amendment. So it was a Rule 15 motion. And the court had all of this information in front of it. So when to? So that affidavit was, in your view, before Judge Sands? Yes, sir. Along with the complaint? Yes, sir. I think common sense also dictates that it was in front of Judge Sands. She even read it, and she mentioned it in her opinion. On what basis was the district court entitled to look at the affidavit in assessment of the motion to do this? Ma'am, I believe it was submitted with the complaint on a Rule 15 motion. Was it referred to in the complaint? I'm looking for a basis for the district court to have been entitled to look at it, other than the fact that they were submitted on the same day. Was it referred to in the complaint? In the same group of papers. In the same group of papers. Was it referred to? Did your complaint make mention of the engineering affidavit as establishing that there was no emergency? I understood you to make several different arguments. You said it was integral to the complaint, though it wasn't mentioned there, and that it was something that the court could take judicial notice of. Which, because it's contested, I don't see how we could do that. I'm trying to understand how it was for the district court to look at it. I believe that the 5th and 14th Amendments require notice, and they require a hearing before government can take property from someone, and this was not done. Furthermore, the Monell claim is because Mr. Tetreault was not educated properly. If you look, if we get a chance to do discovery with Mr. Tetreault, we'll find that he really doesn't have any experience or knowledge in code enforcement. He was a salesman for, I believe, Borlars before he was a code enforcement officer. It's a political appointment, I believe. I would like very much for this court to allow us an opportunity to present evidence, and I believe also, if we're allowed to do some discovery, we'll find out some things that will be beneficial, not only to my client, but to the people of Shazy and the state of New York. Thank you. Hold on. There's more questions. Yes. I was just going to say, the concern I have with the Hamlin Affidavit is, if your position is, well, the Hamlin Affidavit says there's no life-threatening injury, why wasn't that pleaded in the final amended complaint? Because it was clear from the facts. No, no, no, no, no. Excuse me. You know that the dismissal standard requires the court to look at the complaint. Yes. Now, whatever other documents may or may not have shown, my question is, why was an assertion that there were no emergency conditions pleaded in the complaint? I believe that was stated in the amended complaint, Your Honor. In the amended complaint? Tell me what page, because I had thought it was the few, if any, language that I quoted to you. But I'll look if I overlooked something. Walk us through this, Mr. Weinberg. Yes, sir. The issue of emergency was addressed because of Judge Senna's first decision. Just tell me what page. You say you pleaded it in the amended complaint, and I want to see where it is. All right. Or if we don't want to hold him up, perhaps you can show it to us on rebuttal. Yes, sure. You can do it on rebuttal. No need to scramble on duly, Mr. Weinberg. The amended complaint is on 110, A110? Mm-hm. Now, there were two amended complaints, Your Honor. The first one was merely to put in the corporate honor. No, no. The last one, along with the Hamlin affidavit that was submitted along with the Hamlin affidavit, you say it said that there were no emergency situations. In number three? I'm sorry. Page what? Page 111. Okay. We're here. Neither Mr. Arthur nor Mr. Tetreault gave notice to the plaintiff about any repairs needing to be made at Gray Gables before condemning the property under color of state and local law, including but not limited to local law number three. I'm looking for where you pleaded that there were no emergencies. Reference was section 11 with other options to be used in emergency cases. This section is to be used when it reasonably appears that there is a present, clear, and imminent danger to life, safety, and property. If repairs are immediate, the town can authorize the building inspector to immediately cause a repair or demolition. In addition, while the list provided by the town contains many items, very few should be considered to be a clear and present danger imminent to life, safety, or any- Very few, if any, could be considered to present a clear and imminent danger. That's what I read to you, and I suggested to you that that's not the same as saying none do. It suggests that few, if any, and that's what my concern is. And I ask you why you didn't, if your position is that the Hamlin Affidavit supports a pleading that there were no conditions of clear and imminent danger, why you didn't plead that? All right, I appreciate your trying to help me out. It's okay, we'll have some more time after you reflect on our concerns here. This is great. If you look at the town ordinance, your honor, you see that the ordinance itself says repair or demolish. However, the town will not talk to me or my client about the repairs. Those buildings have said since that condemnation for two years without anybody being hurt. Mr. Weinhardt, this is a sidebar inquiry. Yes, sir. What does this town government look like? How would you describe it? It's obviously on the border with Vermont. It's New York, sir. Vermont is where the engineer is. We're just across Lake Champlain from Vermont. What does this town look like? It's an old town that had been developed by a person named William Miner, who was the inventor of something and became incredibly rich. He founded an agricultural institute. He built amazing stone houses and a library. The institution is still running, and it's very successful. How big a town is this? This is the town of Shazy. I understand. It's on Lake Champlain. Ten people? A hundred people? Ten thousand? I'd say 2,000, the same as Champlain. A lot of wealthy people live on the lake shore, and a lot of people who work in their houses or on their farms live downtown. This building is downtown. It's in what they call the hamlet. It's right next to and has a zero-watt line with the town hall for the town. Thank you, Brad. We'll hear more from you, but we'll turn now to Ms. Jelinek, who is appearing by Zoom. Ms. Jelinek, go ahead. Thank you. Good morning, Your Honors. May it please the Court, my name is Lorraine Jelinek. I am counsel for the appellees in this matter who are the town of Shazy, New York, as well as the town supervisor and the former town zoning officer. I just wanted to take a second to thank Your Honors and everyone here today for providing me with the accommodation to appear remotely. And with that said, I'll just turn in response to some of the arguments that we heard from Mr. Weinreb. We have just heard several arguments from the appellants, but as Your Honors had pointed out with respect to the pleadings involved in this matter, those arguments that are attempting to be raised now are irrelevant for purposes of this appeal. Truthfully, the only question on this appeal  The allegation is that the owner of the property was given no notice as to what the violations were that were considered emergency circumstances up until the board meeting. If that's so, and there was no opportunity to be heard at the board meeting, why doesn't this state a plausible claim? Certainly. So, Your Honor, if you look at the town's local law section 11 of the emergency cases, which is the provision of the local law that the town operated under when it pursued the condemnation of the building, it's very clear that the town's zoning board officer, as well as the board, had operated correctly under what is required from those emergency provisions. Do you have some reference to the appendix? I do. I'm sorry. So that's in A15 on the appendix. Yes. So in the section 11 towards the bottom of the page. So under that section, which is the section that was cited to in the letter that is dated July 7, 2019, that's on A17 in the appendix. That's a letter that was provided from the town to the appellants, initially notifying them that the building was unsafe. I understand they were operating under section 11, but section 11 itself says that where it reasonably appears that there's a clear and present danger, unless an unsafe building is immediately repaired and secured or demolished, the town board may take action. Well, I'm not sure how an unsafe building is immediately repaired and secured unless you tell them what's wrong. So, you know, I'm not sure section 11 says that over a period of, what was it, almost two weeks between the inspection and the town board meeting, that there was no opportunity to tell them these are the problems. So I'm still asking you if the pleading is that they got no notice in that period as to what the problem was, and then were not even heard at the board meeting, why that doesn't state a plausible due process claim. I mean, you may succeed down the road, but why should it be dismissed out of hand? So your Honor, so you're correct that the initial notice that was provided to the appellate was about two weeks before the town board meeting. And notice that they had to close down, not notice of what the problems were, or am I mistaken? So at the town board meeting, which took place on the 16th of July, back in 2019, that was, again, prior to the official condemnation order being voted on by the board. Both the Russes and their attorney, who is the same council that's appearing in this matter, were present during that board meeting. And if you look to the board meeting minutes of that, you'll see where it specifically references that not only was their attorney present for that board meeting, but he specifically requested an opportunity to be heard after the board had passed their resolution. So there was opportunity. And again, this was prior to July after the board passed the resolution. Correct. Well, I asked whether that could be construed as a waiver. I'll ask you whether it was their burden or whether it was the town that failed to give them an opportunity beforehand. But I believe, Your Honor, that the town was doing what was requested of them when they agreed to hear any objections after the resolution was passed by their council. And is that in the minutes the council was given the opportunity to be heard? That is correct. Yes. Where in the minutes is that that shows us council being heard? Bear with me one second. I will hold that up for you. So if you look to a 37 of the record, a 37, 37. Yes. If you look to a 37, you'll see under the public comment section where Mr. Council with us today for the appellate. Ask for a chance. And I'm quoting from the minutes. Ask for a chance to speak after the resolutions are passed. Right. And I saw that. And is there something in the minutes that says that they were heard and what they. What they said and what the town, how it all worked out. I didn't see that. Well, if you so the town minutes, as you can imagine, are are not. Or not, including every detail of what the exchange was. But if you do look to page a 40 of the record, which is the same. The same board meeting you'll see after the resolutions were voted on. You'll see a title. It's a little bit further down on page a 40 where it states further public comment. You'll see again in response to the request that was made earlier by the appellate's attorney. So it says that I projected to the passing. Okay. Thank you. Correct. You're welcome. And ask the board to reconsider withdrawing the resolution again, reading from the board minutes itself. So, I mean, while there's not, you know, the detailed exchange of what was actually discussed. There is that notation that there was the opportunity to be heard at that time. And again. You're welcome. Let me ask you again. That part of the minutes of the meeting at page 40. To which you referred Raji. Is there anything that places the notice prior to the meeting? This is these are minutes of the meeting at which Mr. Weinrod was reported to have objected to the passing of resolution number 19-106. And ask the board to consider withdrawing the resolution. Is there any is there something in the timeline of this matter? That shows that Mr. Weinrod or his clients received notice prior to the meeting. All right. Well, there was the initial letter that was provided to the ruses. The appellate's in this case, and that letter is found on page a 17 of the record. That letter is dated July 7th, 2019. And that was the initial notice that was provided by the town. Indicating that the town was operating under their emergency procedures and will hold the special board meeting, which was subsequently conducted. And then also provided them with the date of July 22nd, 2019, by which the building needed to be vacant at time. So, in between that notice on the 7th, the board meeting was held on July 16th. And then subsequently, after it was voted on, it was officially or was officially to become vacant on July 22nd. So, your position is that the letter, which appears as exhibit B on page a 17 from the code enforcement officer. Provided Mr. Weinrod and or his clients with adequate notice of what the projected meeting was about. That's correct, your honor. And I also would just like to note that with respect to section 11 of the town's local law. That operates a little bit differently than section 5 of the local law. That is specific. So, referring again to section 11. Under emergency circumstances provides the town with more broad authority to expedite the process of condemning a building or another structure that. Where does section 11 surface in this timeline? So, section 11 is the initial notice. It's cited to in the July 7th, 2019 letter on page a 17. Which provided the appellants with notice about what provision of the town's local law the town was acting under. For purposes of commencing the condemnation proceeding. And that's all consistent with what's required. And that's something that is important here. I think to address in section 11 of the local law again, it's on a 15 because that requires under emergency circumstances. That the town board does have to meet. I mean, it doesn't require them, but it says the town board may. I'm quoting from the section. The town board may by resolution authorized the building inspector to immediately cause the repair or demolition of such unsafe building. And that's what happened here. After the special meeting was held by the board. Which again, the ruses on their attorney, the opportunity to attend and did attend and speak during that meeting. And subsequently, the board voted to condemn the building under that emergency procedure. Did Mr. Weiner have an opportunity to be heard? Before the resolution was acted on before it was voted. That may be just trying to understand the situation. Based on my knowledge of the record, the only thing that was requested from the board prior to any resolution being adopted was a chance for them to speak after the resolution was reached. And the town had complied with that. Correct. And do you know what was requested by their counsel? I'm sorry. Do you know whether Mr. Weiner was present during that earlier part of the hearing? And whether he asked to be heard or anything of that sort. I believe that they were present initially before anything had occurred during that July 16 2019 meeting. If you look at page 37 of the record, you'll see others present at the inception of that hearing. You'll see Mr. Weiner up and then also Mr. Roots, the appellate in this case. And that just documents from the outset. All the individuals who were attending prior to the meeting. So in response to that, I would say yes. Thank you. Thank you. Thank you. In conclusion, I'd like the court to remember its ruling in the case. In that case, the town wanted three months to demolish an emergency and the court refused it. In this case, nobody ever attempted to demolish the supposedly dangerous condition. Also, I'm sorry. What's the current status of the building? Is it still vacant? Still vacant. No money. But they're taxing my client and they're charging them for water and they're charging them for sewer. But it's vacant and they won't let them fix it, even though that law that they passed says that the owner shall immediately repair it or demolish it. It's right in the body of that order. And I think it's unconstitutional. That gets to other issues. But on whether you were denied due process, Ms. Jelinek has emphasized that at page 37 of the minutes of the town, there's a section on public comment and that four people, including yourself, asked for a chance to speak after the resolution surpassed. And that at page 38, we can see that, I'm sorry, at page 40, I misspoke. There's a section headlined or captioned further public comment. Some people didn't speak. Some people did. You were one of the people who spoke. And to that extent, I'm trying to understand what process you think you were denied that's allowed me to speak to the board before they make their ruling. He said no. Only after I was refused during the first time. Your Honor, as a Federal judge, you know that a material omission is as bad as a material misstatement. Now, you're saying you asked to speak beforehand and were denied that opportunity? And there was an affidavit there that I swore to. You don't see anything. I'm not interested in the affidavit. I'm interested in whether that's in the complaint. Is that alleged in any of the various complaints that you submitted to the court? We didn't have an opportunity. We said we had no notice before they made the ruling. Is that alleged in the complaint? I asked to make a presentation and I was denied. Just tell me whether it's in the complaint. Because I want to look at it. Where is that alleged? In any version of the complaint? Number three. Thank you. Let me get it in front of me to see if I have any further questions. Paragraph three. I'm sorry if I'm not seeing it. Do you want to help me out in seeing where it alleges that you asked to speak beforehand and were denied? If you would give me a moment. That would be the original complaint. And I'd like to look at the amended complaint on 164. I'm very sorry, Your Honors. I don't know if it's an issue on my end, but I'm sorry to interrupt. If Mr. Weinreb is speaking, I can't hear him. He's moved away from the microphone momentarily. I'm sorry. What page and what paragraph? It's the same paragraph. I'm sorry. You moved from an earlier page to 164. Thank you. The second amendment complaint. 164. What paragraph? Number three. Yes. And what does it say about? What does it say about asking to be heard? Defendants failed to give plaintiff due process of law in the condemnation proceeding and deprived the plaintiff of its income and use of this property. I'm sorry. What page is that? Page 164. That's the allegation of the due process violation. But it doesn't say that how it was violated by your act was that you asked to speak beforehand. You see, we can take judicial notice of the town meetings. They say what they say that you were you asked to be heard afterwards. And you're saying that's not the whole story. Correct. And to the extent you pleaded that we would have to credit it, but I don't see it in the pleadings. It was in my affidavit, which was attached to the section 15 motion to amend the plea. Thank you. Thank you. So that that affidavit that affidavit. Was attached to a document filed at the same time or after the second amended complaint. I believe so. Support of looking to file the second amended complaint. Is that correct? It was in support of the second amended complaint. Correct. Thank you. Thank you very much for your patience. Thank you. We appreciate it. It's a curious world out there. It's a curious world along. Thanks very much. Thank you.